**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CHRISTINE E. GIBBS,

       Plaintiff,

v.                                                               No. CV-15-00447-CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff Christine E. Gibbs' *Motion to Reverse and Remand for Rehearing under Sentence Six, or in the Alternative, under Sentence Four, with Supporting Memorandum* (the "Motion), (Doc. 19), filed September 14, 2015; Defendant's *Brief in Response to Plaintiff's Motion to Reverse or Remand* (the "Response"), (Doc. 20), filed November 20, 2015; and Plaintiff's *Reply to Brief in Response to Plaintiff's Motion to Reverse and Remand* (the "Reply"), (Doc. 22), filed November 30, 2015.

Ms. Gibbs filed an application for disability insurance benefits and supplemental social security income on January 26, 2012,[1] alleging disability beginning October 15, 2011. (Administrative Record ("AR") 173-185). Both applications were denied initially on May 22, 2012, (AR 125-132), and again upon reconsideration on March 13, 2013. (AR 133-140). Ms. Gibbs filed a request for a hearing on May 17, 2013, (AR 141-142); a hearing occurred on July 25, 2014 before Administrative Law Judge ("ALJ") Michelle K.

---

[1] In her opinion, the ALJ states that Ms. Gibbs' disability insurance benefits application was filed on January 21, 2012 and her supplemental security income application was filed on January 25, 2012. (AR 10). However, based on the paperwork in the administrative record it appears that both applications were filed on January 26, 2012. (AR 173-185).

Lindsay. (AR 26-62). Ms. Gibbs and Thomas A. Greiner, an impartial vocational expert ("VE") testified at the hearing. (*Id.*) Ms. Gibbs was not represented at the hearing and signed a Waiver of Right to Representation. (AR 172). ALJ Lindsay issued a decision on January 9, 2015, finding that Ms. Gibbs was not disabled under the Social Security Act from October 15, 2011 through the date of the decision. (AR 10-21). Ms. Gibbs filed an application for review by the Appeals Council on March 4, 2015, (AR 6), which was summarily denied on March 27, 2015, (AR 1-5), making the decision of ALJ Lindsay the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Gibbs argues that the ALJ committed reversible, legal error by (i) formulating a residual functional capacity ("RFC") that was contrary to substantial evidence, in part due to a failure to develop the record; and (ii) failing to resolve an inconsistency between the VE testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. 19 at 5-26). Additionally, Ms. Gibbs asks the Court for a "sentence six" remand because (i) the ALJ failed to develop the record,[2] and (ii) based on new evidence of a fibromyalgia diagnosis made by Ms. Gibbs' doctors after the Appeals Council ruled on her appeal. (*Id.* at 5).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to adequately develop the record, the Court finds that the Motion should be **GRANTED** and that the case be **REMANDED** to the Commissioner for further proceedings.

---

[2] The Court will note for clarification purposes that an ALJ's failure to develop the record is not the appropriate use of a sentence six remand. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

**I.     Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v.*

*Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Ms. Gibbs alleges disability beginning October 15, 2011 due to dysthymia, posttraumatic stress disorder, multiple chemical sensitivities, chronic breathing difficulties, chronic chest pain, chronic fatigue, depression, and difficulty walking. (AR 65).

At step one, the ALJ found that Ms. Gibbs had not engaged in substantial gainful activity since the alleged disability onset date of October 15, 2011. (AR 12). Although the ALJ did note that Ms. Gibbs worked as an office manager between six and seven hours a week at the time of the hearing, she did not earn enough for that work to constitute substantial gainful activity. (*Id.*) At step two, the ALJ concluded that Ms. Gibbs was severely impaired by degenerative disc disease of the lumbar spine, mild left shoulder acromioclavicular arthritis, tendinopathy of the left shoulder with tiny low-grade partial articular surface tear, and posttraumatic stress disorder. (*Id.*) At step three, the ALJ determined that none of Ms. Gibbs' impairments, solely or in combination, met or medically equaled the severity of one of the listed impairments in §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. (AR 13-15).

The ALJ proceeded to step four and found that Ms. Gibbs' statements as to the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment. (AR 15-19). The ALJ based the opinion on Ms. Gibbs' testimony, her continued work as an office manager, and daily activities. (AR 19). The ALJ additionally considered the objective medical evidence,

including treatment notes, the extent of medical treatment and relief from medication, diagnostic tests, a physical examination by a consultative physician, and a mental status examination by a second consultative physician. (AR 16-19).

The ALJ ultimately found that Ms. Gibbs had the RFC to perform light work, with some limitations. (AR 15). The ALJ determined that Ms. Gibbs is limited to: (i) lifting, carrying, pushing, and or pulling 20 pounds occasionally and 10 pounds frequently; (ii) sitting for six hours in an eight hour workday; (iii) standing and or walking for six hours in an eight hour workday; (iv) occasional crawling; (v) not climbing ladders, ropes, or scaffoldings; (vi) occasional overhead reaching with the non-dominant upper extremity; (vii) understanding, remembering and carrying out only simple instructions; (viii) maintaining attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task; and (ix) work that involves no more than an occasional change in the routine work setting. (*Id.*) Finally, the ALJ determined, based on testimony from the VE, that Ms. Gibbs is unable to perform any of her past relevant work as an office manager and sales representative. (AR 20).

At step five, the ALJ inquired whether Ms. Gibbs would be able to perform any other work existing in significant numbers in the national economy. (*Id.*) The ALJ noted that Ms. Gibbs was fifty years old at the alleged disability onset date and was therefore classified as an "individual approaching advanced age" in accordance with the Regulations. The ALJ also determined that Ms. Gibbs has at least a high school education and is able to communicate in English. (*Id.*)

The VE testified at the hearing that an individual with Ms. Gibbs' same age, education, work experience, and RFC could perform the jobs of office helper; presser,

hand; and scaling machine operator.[4] (AR 56-57). Based on this analysis, the ALJ concluded that because Ms. Gibbs was capable of performing work existing in significant numbers in the national economy, she was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 21).

## IV. Analysis

Ms. Gibbs argues that the ALJ committed reversible, legal error at steps four and five. Additionally, she asks the Court to remand the case back to the Commissioner on a "sentence six" remand. Ms. Gibbs contends that at step four, the ALJ decided an RFC that was unsupported by substantial evidence and legally erroneous because the ALJ (i) relied on stale evidence and failed to develop the record; (ii) did not include all of Ms. Gibbs' limitations in the RFC; (iii) failed to render a proper credibility finding; and (iv) did not analyze lay witness evidence. (Doc. 19 at 16-21). At step five, Ms. Gibbs states that the ALJ erred by failing to resolve an inconsistency between the VE testimony and the DOT. (*Id.* at 24-26). The Commissioner responds that the ALJ's decision is supported by substantial evidence, free from any harmful legal error, and should be affirmed. (Doc. 20 at 15).

### A. *The ALJ's Analysis at Step Four*

At step four, the ALJ found that Ms. Gibbs had the RFC to perform light work, with some limitations. (*Id.*) The ALJ determined that Ms. Gibbs is limited to: (i) lifting, carrying, pushing, and or pulling 20 pounds occasionally and 10 pounds frequently; (ii) sitting for six hours in an eight hour workday; (iii) standing and or walking for six hours in an eight hour workday; (iv) occasional crawling; (v) not climbing ladders, ropes, or

---

[4] In the transcript, the VE refers to a scaling machine operator, 521.685-286; however, in her opinion the ALJ refers to a sealing machine operator, 521.685-386.

7

scaffoldings; (vi) occasional overhead reaching with the non-dominant upper extremity; (vii) understanding, remembering and carrying out only simple instructions; (viii) maintaining attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task; and (ix) work that involves no more than an occasional change in the routine work setting. (*Id.*)

Ms. Gibbs argues that the ALJ's RFC determination is unsupported by substantial evidence and legally erroneous because the ALJ: (i) relied on evidence from consultative examinations ("CEs") performed in April 2012 and did not consider more recent evidence; (ii) did not include all of Ms. Gibbs' limitations in the RFC; (iii) did not render a proper credibility finding; and (iv) failed to analyze any of the lay witness evidence. (Doc. 19 at 16-21).

The Commissioner responds that substantial evidence supported the RFC assessment, because (i) "a reasonable person could agree that [Ms. Gibbs] remained capable of light work[;]" (ii) the ALJ reasonably found Ms. Gibbs' statements not entirely credible; and (iii) although the ALJ should have discussed the lay witness testimony, the Court should not remand based on this error, because lay witness statements cannot establish a medical impairment. (Doc. 20 at 4-9).

### B. *The ALJ Did Not Properly Discuss New Evidence of Ms. Gibbs' Medical Impairments*

Ms. Gibbs argues that the ALJ relied on "stale evidence," which was based on a CE performed in April 2012, to form the RFC. (Doc. 19 at 16). Ms. Gibbs additionally claims that the ALJ did not discuss MRI results from July 2014 that showed "disc desiccation, hypertrophy, neural foraminal narrowing and stenosis, and small disc bulges, from L2-3 through L5-S1, with probable impingement on the left nerve root at

8

L5-S1." (*Id.*) Ms. Gibbs cites to *Hardman v. Barnhart* for the theory that "[s]pinal stenosis is a positive finding that is consistent with persistent complaints of pain . . . ." 362 F.3d 676 (10th Cir. 2004); (Doc. 19 at 16). The Commissioner responds that since "the ALJ was faced with a wide gulf between [Ms. Gibbs'] claims and objective medical evidence[,]" the Court should defer to the ALJ's findings. (Doc. 20 at 5).

"It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997); 20 C.F.R. § 404.1512(a). However, a social security disability hearing is nonadversarial, and the ALJ is "responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Hawkins*, 113 F.3d at 1164) (internal quotation marks omitted); *see also Heckler v. Campbell,* 461 U.S. 458, 471 n.1 (1983) (Brennan, J. concurring) (describing the ALJ's duty as one of inquiry, requiring the decision maker "to inform [herself] about facts relevant to [her] decision and to learn the claimant's own version of those facts"); 20 C.F.R. § 404.944. This means that the "ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to [her] attention during the course of the hearing." *Madrid*, 447 F.3d at 790 (quoting *Carter v. Chater*, 73 F. 3d 1019, 1022 (10th Cir. 1993)). The ALJ must "inform [herself] about facts relevant to [her] decision and to learn the claimant's own version of those facts." *Heckler*, 461 U.S. at 471 n. 1 (citation omitted). The ALJ's "duty is heightened" when a claimant, like Ms. Gibbs, appears at the hearing without counsel. *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

In order to formulate a RFC determination, an ALJ may rely on reports from CEs

as substantial evidence. *Cowan v. Astrue*, 552 F.3d 1182, 1189-90 (10th Cir. 2008); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Here, the ALJ "assigned significant weight" to the opinion of consultative physician, Dr. Elgabalawi, who examined Ms. Gibbs in 2012. (AR 19, 437). Dr. Elgabalawi found that Ms. Gibbs'

> [g]ait was without the use of an assistive device . . . . [r]ange of motion in the hips, knees, and ankles was normal bilaterally. Supine and sit straight leg raise was normal bilaterally and did not elicit any shooting pain . . . [Ms. Gibbs] was able to walk on her heels and walk on her toes, and she was able to walk heel-to-toe without any difficulty. (AR 439).

However, in August 2013, CNP Linda Ross[5] prescribed Ms. Gibbs a lightweight wheelchair due to "weakness [and] leg pain." (AR 509). In 2014, an MRI showed spinal stenosis. (AR 561). Additionally, Dr. Fen Sartorius signed a "Certificate of Eligibility for Parking Placard for Mobility Impaired Individuals," finding Ms. Gibbs eligible because she "cannot walk 100 feet without stopping to rest," and the condition is permanent. (AR 512). Also, Ms. Gibbs was approved for the Santa Fe Ride Program due to her disability, (AR 327), and an Individual Plan of Care to provide her with a helper for daily tasks.[6] (AR 579).

In rebutting this evidence, the ALJ stated that the MRI results found the problems to be "considered only mild in nature." (AR 16). The ALJ noted that in January 2013, Dr. William J. Wengs found that Ms. Gibbs' "[g]ait shows the patient to walk with normal

---

[5] The Court notes that as a Certified Nurse Practitioner ("CNP") Ms. Ross is not an "acceptable medical source[ ]." 20 C.F.R. § 404.1513(a)(1)-(5). However, she is considered an "other" medical source, 20 C.F.R. § 404.1513(d)(1), whose opinion should be weighed according to SSA regulations. 20 C.F.R. § 404.1527(d), *see also Franz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (citing Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *4).

[6] This evidence was not presented to the ALJ, but was presented to and considered by the Appeals Council on review. (Doc 19. at 12); (AR 4). The Tenth Circuit has held that pursuant to 20 C.F.R. § 404.970(b), "new evidence [submitted to the Appeals Council] becomes a part of the administrative record to be considered while evaluating the Secretary's decision for substantial evidence." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (quoting *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)). Thus, the Court has considered this evidence as part of the administrative record.

stride length and base width." (AR 496). However, this examination took place before the MRI indicated a basis for Ms. Gibbs' complaints. Finally, the ALJ dismissed Dr. Satorius' certification of eligibility for a parking placard as "inconsistent with the evidence as a whole when viewed in its entirety and not supported by his own treatment notes," thus the ALJ assigned his opinion "little weight." (AR 19). Similarly, the Commissioner argues that the ALJ discussed the opinion of Dr. Sartorius and decided to give it little weight, which the Commissioner argues was the appropriate analysis in this case. (Doc. 20 at 9-11). The ALJ did not address the wheelchair prescription or the Santa Fe Ride Program Approval.

Although the record shows that Ms. Gibbs has continually complained of leg pain and difficulty walking, (AR at 36, 39-40, 251, 332, 336, 371, 392, 437, 450, 484, 495), the ALJ dismissed the most current evidence of a medical impairment in favor of a CE that was performed in 2012. "There are many problems with this approach, beyond the obvious objection to the use of a stale consulting report in preference to a treating physician's current assessment." *Stephens v. Apfel*, No. 97-6090, 134 F.3d 383, 1998 WL 42524, at *2 (10th Cir. Feb. 4, 1998) (unpublished) (Finding a 1989 CE could not "contradict the later medical conclusion that plaintiff's condition had worsened" according to a 1993 report.) It appears from the MRI results that "the relevant medical record obviously underwent material changes" between the CE in 2012 and the MRI in 2014; however, the ALJ did not order another examination or provide the CE physician, Dr. Elgabalawi, with the new MRI results and medical evidence and request a follow-up opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (ALJ's reliance on a stale opinion found to be "troubling" in light of material chances in the medical record

11

since the report the ALJ relied on.) Although Dr. Elgabalawi's opinion was relevant at the time, "it does not account for material[,] objective evidence developed long afterward." *Id.*

The ALJ has "broad latitude" in deciding to order a CE; however, it is clear in this case that a new CE would clarify the conflicting evidence in the record. *Hawkins*, 113 F.3d at 1166 (citing 20 C.F.R. § 404.1512(f); § 404.1519(a)) (Finding that a CE is appropriate "where there is a direct conflict in the medical evidence . . . where the medical evidence in the record is inconclusive . . . [or] where additional tests are required to explain a diagnosis . . . .") (citations omitted). Ms. Gibbs met her burden by ensuring that evidence which suggested the possibility that a severe impairment existed was in the record. It was the ALJ's burden to then order a CE because it would have been "necessary or helpful to resolve the impairment." *Id.* at 1167.

The Court finds that there was an inconsistency between the medical report prepared by Dr. Elgabalawi in 2012 and the recent medical evidence in the medical record. The ALJ has a duty to develop an adequate record and Ms. Gibbs presented sufficient evidence to merit further investigation with regards to her leg pain and difficulty walking. The ALJ did not develop an adequate record with regard to the conflicting evidence, and her failure to do so is reversible error.

### C. Court will Remand on a Sentence Four Remand

Because the Court is remanding on the basis that the ALJ did not adequately develop the record, which affects the entire disability analysis, the Court will not address the other issues raised by Ms. Gibbs. *Kanelakos v. Astrue*, No. 06-6123, 249 Fed. Appx. 6, at *9 (10th Cir. Sept. 12, 2007) (unpublished). However, the Court will note that

although Ms. Gibbs asked the Court to remand this case on a sentence six remand, the Court is remanding the case under sentence four. A District Court may remand a case based on sentence four or sentence six of the statute. 42 U.S.C. § 405(g). A sentence four remand allows the court to enter "a judgment affirming, modifying, or reversing the decision of the Secretary . . . ." *Id.* By comparison, under a sentence six remand, the District Court does not affirm, modify, or reverse the Secretary's decision, or rule on the decision at all. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that new evidence might have changed the outcome of the prior proceeding." *Id.* (citing § 405(g)). The Court is remanding this case on a sentence four remand.

### V.  Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to properly develop the record. On remand, the ALJ should properly develop the record with regard to the conflicting evidence; additionally, the Court suggests that the ALJ obtain a more updated examination or report. The Court will not address Ms. Gibbs' remaining arguments as they are mooted by further proceedings.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for Rehearing under Sentence Six, or in the Alternative, under Sentence Four, with Supporting Memorandum*, (Doc. 19), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE